IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Laura S. Brown, | ) | Civil Action No. 8:15-cv-04094-JMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE**) |
| vs. | ) | |
| | ) | |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In 2012, Plaintiff filed an application for SSI, alleging disability beginning January 1, 1999.[3]  [R. 169–77.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 70–82, 85–98].  Plaintiff requested a hearing before an administrative law judge ("ALJ") and on October 24, 2014, ALJ Richard L. Vogel conducted a hearing on Plaintiff's claim.  [R. 31–59.]

The ALJ issued a decision on December 18, 2014, finding Plaintiff not disabled.  [R. 14–25.]  At Step 1,[4] the ALJ found Plaintiff had not engaged in substantial gainful activity since September 25, 2012, the application date.  [R. 16, Finding 1.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: obesity, coronary artery disease, and diabetes mellitus.  [R. 16, Finding 2.]  The ALJ also found Plaintiff had the following non-severe impairments: hypertension, respiratory illness, and depression.  [*Id*.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 17, Finding 3.]  The ALJ specifically considered Listings 4.04, 9.00, and SSR 02-1p.  [R. 17–18.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[3] Because Plaintiff is only eligible for SSI, the relevant period begins on the date of her application, September 25, 2012.  20 C.F.R. § 416.330.

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work (described as requiring lifting and carrying up to 10 pounds occasionally and lesser amounts frequently, sitting for 6 hours in an 8-hour day, and standing and walking occasionally (2 hours in an 8-hour day)) with no climbing or crawling and no exposure to hazards.

[R. 18, Finding 4.]  Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform her past relevant work as a janitor and sandwich maker.  [R. 24, Finding 5.]  However, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 24, Finding 9.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, since September 25, 2012, the date the application was filed.  [R. 24, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined review.  [R. 1–6. ]  Plaintiff filed this action for judicial review on October 2, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly assesses Plaintiff's RFC in accordance with SSR 96-8p [Doc. 20 at 15–21], and failed to properly evaluate Plaintiff's credibility in accordance with SSR 96-7p [*id*. at 21–25].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence, and is entitled to deference and should be affirmed. [Doc. 21.]

3

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment

4

for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

   In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699

8

F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having

several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]    20 C.F.R. § 416.920(a)(4)(iii), (d).

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

10

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20

---

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 416.969a(c)(1).

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important

when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.

13

*See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a

14

determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity,

> severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Residual Functional Capacity**

Plaintiff argues that the ALJ erred in evaluating her RFC because he failed to consider her inability to work on a sustained basis, particularly in light of her numerous hospitalizations and her resulting likely absenteeism from work. [Doc. 20 at 17.] Plaintiff cites this Courts findings in *Brown v. Colvin*, No. 4: 14-cv-2470-RMG-TER (D.S.C. July 17, 2015)[9], where the evidence reflected Plaintiff was hospitalized or seen in the emergency room at least five times in an eighteen-month period making it likely he would miss four days of work per month. [*Id.* at 18.] Plaintiff contends the ALJ should have enlisted the testimony of a vocational expert ("VE") to determine the effect of Plaintiff's frequent hospitalizations on her ability to sustain a range of sedentary work. [*Id.*] Plaintiff also contends the ALJ failed to consider Plaintiff's pain in formulating the RFC in this case. [*Id.* at 19.] Plaintiff argues the ALJ did not make findings required under the two-part test of *Craig v. Charter*, 76 F.3d 585 (4th Cir. 1996) and, thus failed to comply with the Fourth Circuit pain rule in developing Plaintiff's RFC. [*Id.* at 19–21.]

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s),

---

[9] Plaintiff cites the case of *Brown v. Colvin*, in support of her contention that the ALJ should have considered her hospitalizations in determining her ability to work; however, unlike the Plaintiff in *Brown*, no treating or reviewing physician found Plaintiff to be so limited.

18

> including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).   The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*   Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC. . . .

*Id*. at 34,476.

19

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id*. at 34,477.  SSR 96–8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted ." *Id*. at 34,478.  Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

### ALJ's Development of Plaintiff's RFC

In considering Plaintiff's RFC, the ALJ stated that he followed the two-step process outlined in the regulations requiring him to first determine whether there is an underlying medically determinable physical or mental impairment that could be expected to produce Plaintiff's pain or other symptoms; and, second, to evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning.  [R. 18.]  The ALJ explained his consideration of the medical evidence related to Plaintiff's hospitalization as follows:

> The claimant was hospitalized overnight beginning on January 16, 2013 for complaints of chest pain. Heart catheterization showed severe focal stenosis of the first obtuse marginal branch and she underwent bare metal stent placement.  It was noted that the claimant had *severe issues with compliance with her medications and other medical therapy*. She was advised to stop smoking and to make overall lifestyle management changes. On the day of discharge, it was reported that the claimant was feeling well. A cardiac rehabilitation referral was to be placed. (Exhibit 6F, pages 3-4 and 7) The claimant underwent left heart catheterization again in March 2013 and

was treated with a bare-metal stent placement within the prior stent. She was stable at discharge. (Exhibit 8F) In addition, it was reported in March 2013, the claimant denied any chest pain, shortness of breath, heart failure symptoms, syncope, loss of consciousness, transient is chemic attack-like symptoms, or stroke. (Exhibit 16F, page 1)

The claimant was hospitalized on October 9, 2013 after presenting with chest pain and elevated troponin level. She was taken to the cardiac catheterization lab and found to have acute in-stent restenosis of her OM (obtuse marginal) stent and underwent bare-metal stent placement. She was discharged five days later with diagnoses of acute lateral myocardial infarction involving in-stent restenosis of a mid-obtuse marginal, significant residual disease of the right coronary artery, obesity, cigarette use disorder, and diabetes mellitus. It was noted that the claimant was ambulatory and feeling well the last few days of her hospital stay. (Exhibit 19F, page 1)

Regarding her testimony as to respiratory problems, the medical evidence of record does reveal that the claimant was hospitalized for pneumonia from November 16, 2011 through November 26, 2011; however, when seen in follow-up on November 30, 2011, she was described as well-appearing and in no distress and her lungs were to auscultation and percussion. (Exhibit 1 F, page 4) The claimant was hospitalized in March 2012 for respiratory distress and was treated with antiviral and bronchodilator therapy as well as supplemental oxygen and antimicrobial therapy. It was noted that the claimant's improvement was slow, but it was further reported that she presented as difficult behaviorally and would not get out of bed during her hospital stay. She was stable upon discharge and advised to follow-up with her primary care physician. (Exhibit 5F, page 79) The claimant was hospitalized for asthma exacerbation in January 2013; however, her lungs were [clear] to auscultation at the time of discharge (see Exhibit 5F, page 3). In addition, the claimant's lungs were clea[r] to auscultation and percussion upon physical examination in April 2013. (Exhibit 12F, page 9) Dr. Dalbow reported in April 2014 that the claimant's chest and lung exam revealed quiet, even and easy respiratory effort with no use of accessory muscles. (Exhibit 17F, page 21) Additionally, Dr.

> Vyge indicated in October 2014, that the claimant's chest and lung exam revealed quiet, even and easy respiratory effort with no use of accessory muscles and on auscultation, normal breath sounds, no adventitious sounds and normal vocal resonance. (Exhibit 17F, page 7)

[R. 20–21 (*emphasis added*).]

While the ALJ acknowledged Plaintiff's hospitalization, the ALJ found that Plaintiff's non-compliance with treatment detracted from her credibility as to the limitations imposed by her impairments.  For instance, the ALJ explained that

> it was reported by her primary care physician in February 2013, that *she had not been compliant with her medications and had not been so in more than a year*. He also reported that the claimant had not been seen at the facility in over a year. (Exhibit 7F, page 2) In March 2013, it was reported in March 2013, that the claimant had presented to the hospital two weeks earlier, but *left against medical advice*. It was also noted that the *claimant had been off Plavix for two weeks despite medical advice and that it sounded like she had never got the prescription filled*. (Exhibit 16F, page 1) Also detracting from the claimant's credibility is her apparent drug seeking behavior. For example, it was noted on September 13, 2011, that the claimant became upset with her treating physician when her request for pain medication was denied. (Exhibit 1F, page 10) In addition, records from Doctor's Care indicated that the claimant was seen on numerous occasions during the period from September 2011 through March 2013 for various pain complaints with little in the way of objective findings and was consistently prescribed pain medications. (Exhibits 2F and 10F) In addition, her treating physician reported in February 2013 at Beaufort Jasper Hampton Comprehensive Health, that the claimant was asking for more narcotics and noted that she had a history of narcotic abuse. (Exhibit 7F, page 2) In addition, a nurse practitioner with the facility indicated in April 2013, that she had reviewed the claimant's patient drug history from Rite Aid pharmacy and discovered that she had *received 4+ prescriptions for controlled substance pain medications over a two-month period from three different providers*. She refused to provide any controlled substances to the claimant

22

> at that visit. (Exhibit 12F, page 9) The claimant presented again in August 2013 with continued complaints of back pain; however, it was noted that her recent CT of the thoracic and lumbar spines had been unremarkable. Her physical exam was also unremarkable. She was prescribed Motrin and referred to pain management. (Exhibit 12F, pages 2-3) It was noted in February 2014, that the claimant had been referred to a pain management specialist in the past, but that she had failed to keep the scheduled appointments. The claimant requested a refill of Tylenol #4, but it was noted that drug monitoring had revealed that she had received 60 tablets of the medication less than a month earlier. (Exhibit 17F, page 26) Dr. Dalbow reported in August 2014, that the claimant presented with request for sleep and pain medications although her main complaint was that of oral herpes simplex. (Exhibit 17F, page 11)

[R. 22 (*emphasis added*).]

Upon reviewing the ALJ's decision, it is clear the ALJ found Plaintiff's hospitalizations were more the result of her non-compliance with treatment and possible drug-seeking behavior than with the severity of her impairments. The law allows the ALJ to considered Plaintiff's noncompliance with her medications in determining credibility. *See Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1993) (considering the claimant's failure to follow treatment or take prescribed medications as a factor in assessing the claimant's credibility). The ALJ found that, based on the evidence, Plaintiff's coronary artery disease was adequately accommodated for in limiting Plaintiff to a range of sedentary work. [R. 23.] The ALJ concluded that "in light of the evidence suggesting the claimant may have been overstating her symptoms, the undersigned cannot find the claimant's allegation that she is incapable of all work activity to be credible." [R. 24.] And while Plaintiff now tries to argue that she will miss too many days of work due to hospitalizations, thus, making her

unable to perform sedentary work, there is no opinion from a treating physician opining as to such limitation.   Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

**Credibility**

Plaintiff contends the ALJ failed to comply with SSR 96-7p in evaluating her credibility.  [Doc. 20 at 21–22.]  Plaintiff argues that her persistent efforts to obtain pain relief should have enhanced her credibility rather than detracted from it.  [*Id.* at 24–25.]  As outlined above, the ALJ properly followed the two-part test in determining credibility and adequately explained his consideration of Plaintiff's alleged symptoms and limitations. While Plaintiff disagrees with the ALJ's decision, the ALJ adequately explained his conclusion that Plaintiff engaged in drug-seeking behavior rather than behavior showing efforts to obtain pain relief.  The ALJ explained that the record contained statements by treating physicians suggesting that Plaintiff was not being completely truthful regarding the need for narcotic pain medications and was seeking prescriptions for these controlled substance pain medications from various doctors at the same time.  As a result of the Plaintiff's  history of drug seeking behavior and her failure to comply with treatment, the ALJ properly assumed some exaggeration of the Plaintiff's symptoms and complaints of pain.  *See Williamson v. Colvin*, C/A No. 8:12-2887-JFA-JDA, 2014 WL 1094404, at * 14 (D.S.C. March 18, 2014).  It is not the duty of the Court to reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," the Court must defer to the Commissioner's decision. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir.

24

2005).  The Court declines to reweigh evidence already considered by the ALJ; such an exercise is contrary to law.  Accordingly, the Court finds the ALJ's credibility analysis is supported by substantial evidence.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 30, 2017
Greenville, South Carolina